# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

AMERICAN ZURICH INSURANCE COMPANY        **PLAINTIFF**

v.        **CAUSE NO. 1:16CV354-LG-RHW**

CURTIS GUILBEAUX        **DEFENDANT/
COUNTER-CLAIMANT**

v.

SOUTHWEST BUSINESS CORPORATION, d/b/a/
INSURANCE PARTNERS, USAA INSURANCE
AGENCY, INC., and AMERICAN ZURICH
INSURANCE COMPANY        **COUNTER-DEFENDANTS**

## MEMORANDUM OPINION AND ORDER
### REGARDING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the [83] Motion for Summary Judgment filed by USAA Insurance Agency, Inc., and the [85] Motion for Summary Judgment filed by Southwest Business Corporation, d/b/a Insurance Partners. Both Motions seek dismissal of Defendant Curtis Guilbeaux's counterclaims and have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that there are questions of material fact for the jury regarding certain of Guilbeaux's numerous counterclaims against Insurance Partners. However, USAA has shown there is no question of material fact for the jury regarding Guilbeaux's counterclaims against it. Accordingly, USAA's Motion will be granted, and Insurance Partners' Motion will be granted in part and denied in part.

BACKGROUND

This case originated as a Complaint for Declaratory Judgment filed by

American Zurich Insurance Company against its insured, Curtis Guilbeaux. (Compl. 1, ECF No. 1). Guilbeaux obtained builder's risk insurance from Zurich on his property, and two months later the property was destroyed by fire. Zurich denied the claim, contending material misrepresentation on the application form as to the stage of completion of the property. Zurich alleges that Guilbeaux's application asserted 30 percent completion, but "had it been properly informed that the Property had been under construction for two (2) years without being insured and that it was 80-90% completed at the time the insurance application was submitted, it would not have agreed to write the risk." (*Id*. at 4). Zurich alleges that Guilbeaux made material misrepresentations that justify rescission of the policy, and requests that the Court declare the policy void under Mississippi law.

Guilbeaux answered the complaint and counterclaimed against Zurich, USAA Insurance Agency, Inc., and Southwest Business Corporation d/b/a Insurance Partners. (Guilbeaux Answer 5, ECF No. 10). In his counterclaims, Guilbeaux alleges that he began construction on his log home in early 2015, and in May 2016 called USAA to purchase a builder's risk policy for the property. (*Id*. at 7-8). USAA transferred the call to its "partner," Insurance Partners, who could handle the request. The agent at Insurance Partners asked Guilbeaux questions to fill out the builder's risk insurance application, and the electronic application was sent to Guilbeaux to review and sign. Guilbeaux alleges that the Insurance Partners agent failed to fill out the application form correctly, (*id*. at 10), and that he did not sign the application. (*Id*. at 12).

Guilbeaux's counterclaims against Insurance Partners are for bad faith, negligent failure to procure insurance coverage, breach of contract/tortious breach of contract, breach of fiduciary duty, gross negligence, negligent misrepresentation, conversion, civil conspiracy, intentional or fraudulent misrepresentation, infliction of emotional distress, breach of the duty of good faith and fair dealing, and respondeat superior/vicarious liability. Guilbeaux's counterclaims against USAA are all of these plus negligence, waiver and estoppel, and negligent supervision. Both Insurance Partners and USAA move for summary judgment as to all of Guilbeaux's counterclaims against them.

DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Because this case arises under the Court's diversity jurisdiction, the substantive law of Mississippi applies. *Cox v. Wal-Mart Stores E.,*

*L.P.*, 755 F.3d 231, 233 (5th Cir. 2014).

**1.     Breach of Contract/Tortious Breach of Contract, Breach of the Duty
        of Good Faith and Fair Dealing**

USAA and Insurance Partners argue that Guilbeaux cannot maintain a
breach of contract claim against them because they had no contract with Guilbeaux.
The contract of insurance at issue in this case was issued by Zurich, and neither
USAA nor Insurance Partners is a party to it.  Guilbeaux argues in response that he
had separate contracts with USAA and Insurance Partners to properly procure an
insurance policy.  Specifically, Guilbeaux alleges that he paid premiums to
Insurance Partners for the insurance policy, and "Insurance Partners breached its
contracts with Guilbeaux through its actions." (Guilbeaux Answer 29, ECF No. 10).
He also alleges that "USAA undertook on behalf of Guilbeaux to secure insurance
coverage for him and breached its contracts with Guilbeaux through its actions."
(*Id*. at 22).

These allegations describe possible negligence claims against USAA and
Insurance Partners, but they do not show that Guilbeaux's interactions with USAA
or Insurance Partners somehow created a contract and that the contract was
breached.[1]  The lack of evidence of a contract with USAA or Insurance Partners is
also fatal to Guilbeaux's good faith and fair dealing claim.  The covenant of good

---

[1]  The elements of a contract are[:] "(1) two or more contracting parties, (2)
consideration, (3) an agreement that is sufficiently definite, (4) parties with legal
capacity to make a contract, (5) mutual assent, and (6) no legal prohibition
precluding contract formation." *Hattiesburg Health & Rehab Center, LLC v. Brown*,
176 So. 3d 17, 21 (Miss. 2015).

faith and fair dealing applies to performance and enforcement of a contract, and none has been shown between Guilbeaux and USAA or Insurance Partners. *Limbert v. Miss. Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 998 (¶11) (Miss. 2008). As a result, Guilbeaux's breach of contract, tortious breach of contract, and breach of duty of good faith and fair dealing must be dismissed.

## 2. Bad Faith

Mississippi courts "have come to term an insurance carrier which refuses to pay a claim when there is no reasonably arguable basis to deny it as acting in 'bad faith,' and a lawsuit based upon such an arbitrary refusal as a 'bad faith' cause of action." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 842 (Miss. 1984). Guilbeaux bears a higher burden of proof on his claim of bad faith than on his breach of contract claim. *Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 146 (N.D. Miss. 1987) (citing *Vicksburg Furniture Mfr., Ltd. v. Aetna Cas. & Sur. Co.*, 625 F.2d 1167 (5th Cir. 1980)). "[A] bad faith refusal claim is an 'independent tort' separable in both law and fact from the contract claim asserted by an insured under the terms of the policy." *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 895 (Miss. 2006).

The basis of Guilbeaux's bad faith claim against USAA is his allegation that USAA denied his insurance claim "with knowledge that no grounds for denial existed." (Guilbeaux Answer 20, ECF No. 10). He also alleges that both USAA and Insurance Partners "are sophisticated insurance people who drafted, filled out and

then presented Guilbeaux with application information containing confusing, misleading, self-serving and self-saving language, meant to confuse, entrap, and mislead an unsuspecting reader." (*Id*. at 20, 28). He alleges that Insurance Partners' actions in filling out the application and assisting in the denial of the claim were committed in bad faith.

      a. <u>Bad Faith Denial of Claim</u>

Both USAA and Insurance Partners argue that they cannot be liable for bad faith denial of benefits because neither of them denied benefits. The letter informing Guilbeaux that benefits would be denied and the policy rescinded is from Zurich, and references a Zurich "'One-Shot' Builders Risk Policy number BR09227689." (Guilbeaux Responses, Ex. B, ECF Nos. 100-2, 101-2). Guilbeaux argues only that USAA and Insurance Partners acted as Zurich's agent in procuring the insurance. (*See* Guilbeaux Ins. Ptnrs. Resp. Mem. 33, ECF No. 106; Guilbeaux USAA Resp. Mem. 8, ECF No. 108). There is no allegation or evidence that USAA or Insurance Partners was a party to the Zurich insurance contract or that either had a role in the decision to deny benefits. The Court finds an insufficient basis for holding USAA or Insurance Partners liable for Zurich's refusal to pay benefits. *See Rogers v. Nationwide Prop. & Cas. Ins. Co.*, 433 F. Supp. 2d 772, 776 (S.D. Miss. 2006) (citations omitted) (agent, as a non-party to the contract cannot be liable under a bad-faith theory of recovery). Therefore, USAA and Insurance Partners are entitled to summary judgment in regard to the bad faith denial of benefits claim.

b. Bad Faith in Application Process

Guilbeaux alleges that Insurance Partners "filled out and then presented Guilbeaux with application information containing confusing, misleading, self-serving and self-saving language, meant to confuse, entrap, and mislead an unsuspecting reader." (Guilbeaux Answer 28, ECF No. 10). He alleges that USAA is legally responsible for Insurance Partners' actions. (*Id*. at 20).

Guilbeaux does not cite any case law indicating that a "bad faith" claim exists under these circumstances. (*See* Guilbeaux Ins. Ptnrs. Resp. Mem. 33, ECF No. 106). However, somewhat similar allegations against an insurance agent for intentionally and knowingly incorrectly completing an application for insurance have been construed simply as a fraud claim. *Wildmon v. EMC Nat. Life Co.*, No. 1:08CV173-SA-JAD, 2009 WL 691226, at *3 (N.D. Miss. Mar. 11, 2009). The elements of a fraud claim are (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Id.* (citing *Great S. Nat'l Bank v. McCullough Env't Servs.*, 595 So. 2d 1282, 1289 (Miss. 1992)).

If the bad faith claim is construed as a fraud claim, Guilbeaux's allegations and evidence do not show that he was ignorant of the falsity of the misrepresentation, or that he had the right to rely on the misrepresentation that his house was thirty percent completed. He testified that Ms. Trigg, the Insurance

Partners agent, asked him if the house "was almost 30 percent complete or more than 30 percent complete." (Ins. Ptnrs. Mot. Ex. 1, at 24-25, ECF No. 85-1). He responded, "I'm much more than 30 percent complete." (*Id*. at 25). He further testified that he reviewed the application before electronically signing it, and he saw the part of the application that stated the house was thirty percent complete. (*Id*. at 29). Nevertheless, he did not inform Insurance Partners that the percent complete information was incorrect.[2] (*Id)*. He signed the application without changes. (*Id*. at 30-31, 88). Guilbeaux's testimony shows that he will be unable to establish a claim of fraud or bad faith in the application process against Insurance Partners.

Guilbeaux argues that USAA is liable for bad faith in the application process because 1) he called USAA asking for a builder's risk policy; 2) USAA did not tell him that homeowner's, rather than builder's risk, insurance was appropriate for his circumstances; and 3) USAA transferred his call to its partner, Insurance Partners, to complete the transaction. (Guilbeaux USAA Resp. Mem. 8, ECF No. 108). Guilbreaux does not cite any case law indicating that Mississippi recognizes a bad faith claim arising from actions like these, and the Court has found none. Accordingly, USAA is entitled to summary judgment in regard to the bad faith in

_____

[2] The testimony of Insurance Partner's representative was that Guilbeaux's property was not necessarily uninsurable if the correct percentage of completion had been stated on the application – "a policy can be written for a structure that's over 30 percent complete, it simply requires underwriter review. So from our perspective there is not a hard stop at 30 like you can't sell it." (Harrison Dep. 124, ECF No. 101-5).

application process claim.

## 2. Breach of Fiduciary Duty

As against both Insurance Partners and USAA, Guilbeaux alleges that he entrusted them with securing insurance coverage on his property, and they held a position of trust and confidence with him. (Guilbeaux Answer 23, 30, ECF No. 10). The elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship, and (2) its breach. Restatement (Second) of Torts § 874 and comment b.

"In Mississippi, the purchase of insurance is deemed to be an arms' length transaction." *Booker v. Am. Gen. Life & Accident Ins. Co.*, 257 F. Supp. 2d 850, 856 (S.D. Miss. 2003) (citations omitted). There is no creation of a fiduciary duty between an insurance agent and an insured, even when the insured relies on the advice of the agent selling the policy. *Id*. at 859; *see also Gibson v. Markel Int'l, Ltd.*, No. 1:07CV1245HSO-JMR, 2008 WL 3842977, at *7 (S.D. Miss. Aug. 14, 2008) (reliance on agent as a salesman, in short-term arms' length transaction for purchase of policy did not create fiduciary relationship). Generally, "[t]he severity of the burdens and penalties integral to a fiduciary relationship should not apply to ordinary insurance policy transactions." *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (Miss. 2006). "[B]ut in some rare cases the terms of the contract itself create a fiduciary relationship." *Id*. at 995. Since neither Insurance Partners nor USAA is a party to the contract at issue here, this rare exception could not apply. Accordingly, Insurance Partners and USAA are entitled to summary judgment regarding the claim of breach of fiduciary duty.

3.      **Negligent Failure to Procure Insurance Coverage, Negligence, Misrepresentation**

As against both USAA and Insurance Partners, Guilbeaux alleges that the Insurance Partners agent had full knowledge of the information necessary to procure coverage for him, but failed to do so because the policy procured was not honored by Zurich.  (Guilbeaux Answer 21-22, 30-31, ECF No. 10).  The claims based on these allegations are considered together.

Mississippi law recognizes claims for negligent procurement of insurance.  *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1162-64 (Miss. 2010).  "An insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent person would exercise in the transaction of his own business."  *Id*. at 1162 (brackets omitted).  "The cases recognizing a claim for negligent failure to procure do so in the context of allegations that the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage requested by the insured."  *Emerald Coast Finest Produce Co., Inc. v. Alterra Am. Ins. Co.*, 864 F.3d 394, 399 (5th Cir. 2017) (quotation marks and citation omitted).  The agent's duty is limited.  The agent, for example, is under no "affirmative duty to advise buyers regarding their coverage needs," as "insureds are in a better position" to make that assessment.  *Mladineo*, 52 So.3d at 1163; *see also Thomas v. State Farm Mut. Auto. Ins. Co.*, 796 F. Supp. 231 (S.D. Miss. 1992).  "But there may arise facts and circumstances in which reasonable care could require the agent to do more than simply give his customer a quote for coverage."  *LaFleur v. State Farm Fire &*

*Cas. Co.*, No. 1:07CV527 LTS-RHW, 2008 WL 2498140, at *1 (S.D. Miss. June 19, 2008).

The Mississippi Supreme Court has affirmed a judgment against an insurance agent for negligent procurement in circumstances similar to those here; the agent failed to disclose a disqualifying event when he completed the plaintiff's application for fire insurance. *Lovett v. Bradford*, 676 So. 2d 893 (Miss. 1996). The plaintiff testified he told the agent that although he had made a fire claim previously, he was not sure about the date and thought it was not within five years. The agent testified that the plaintiff told him he had not had a fire loss within five years, and so the agent marked no to the question. The plaintiff reviewed and signed the application. The plaintiff's home was thereafter destroyed by fire. When it turned out that the plaintiff had received fire insurance proceeds four and a half years previously, insurance proceeds were denied for misrepresentation. The court held that "[t]he jury could have believed that, in his haste to collect a premium, [the agent] did not exercise reasonable diligence in investigating [the plaintiff's] statement on previous fire loss." *Lovett*, 676 So. 2d at 896.

According to a leading treatise on insurance law in Mississippi:

The rule that charges insurance companies with the misconduct of agents who make misrepresentations on applications applies even when the applicant signs the application that contains the misrepresentations. The rule will protect insureds who are overreached in this area by agents. However, the rule also will allow unscrupulous insureds who provided false answers to agents' questions to later argue that the correct information was communicated, but then misstated by the agent. Resolution of whether the insured was truthful and the agent dishonest, or the insured was untruthful and the agent honest, is

a question for the trier of fact.

MISS. INS. LAW AND PRAC. § 6:14, *Agents Who Complete Applications for the Applicant* (2017) (citing *Pedersen v. Chrysler Life Ins. Co.*, 677 F. Supp. 472, 476 (N.D. Miss. 1988) and *Nat'l Life & Acc. Ins. Co. v. Miller*, 484 So. 2d 329 (Miss. 1985)).

Insurance Partners and USAA raise Mississippi's "duty-to-read" and "imputed-knowledge" doctrines, under which insureds are charged with knowledge of the terms of the policy as a matter of law.[3] *Mladineo*, 52 So. 3d at 1161. Mississippi holds that claims of negligent procurement, or fraudulent or negligent misrepresentation fail as a matter of law when the proximate cause of an insured's damage is his own failure to read the policy. *Bell v. Certain Underwriters at Lloyd's London*, 200 So. 3d 447, 452-53 (Miss. Ct. App. 2016) (citing *Mladineo*, 52 So.3d at 1164 (¶ 38)).

The builder's risk insurance policy issued to Guilbeaux excludes "existing inventory" from coverage, unless specifically endorsed. (Compl. Ex. A 7, ECF No. 1-1) (ECF pagination). "Existing inventory" is defined as "buildings or structures in the course of construction that are more than 30% complete prior to the inception date of this policy." (*Id.* at 17) (ECF pagination). There is no specific endorsement attached to the policy providing coverage for Guilbeaux's property even though it was more than thirty percent complete and would otherwise be considered "existing

---

[3] The application and the insurance policy are read together as the insurance contract. *Provident Life & Acc. Ins. v. Goel*, 274 F.3d 984, 993 (5th Cir. 2001).

inventory." (*See* Harrison Dep. 44, ECF No. 101-5). Guilbeaux could be "imputed with knowledge" that the builder's risk policy did not cover his property if there was evidence that he received the policy.

For an insurer to get the benefit of a presumption of receipt of an insurance policy, the insurer must tender evidence of mailing – such as an affidavit of an employee demonstrating the insurer's records acknowledging mailing. MISS. INS. LAW AND PRAC. § 2:14, *Proving the Insured Received the Policy, Which She Has a Duty to Read* (2017). There is no such evidence provided by Insurance Partners. Guilbeaux testified that he did not receive a hard copy of the policy until he met with an adjuster at the damaged property, and he "may or may not" have received it by email when it was issued. (Guilbeaux Dep. 124-25, ECF No. 83-1). Gilbeaux provided a list of emails between himself and Insurance Partners agents, but the application appears to be the only pdf document that was transmitted between them. (Gilbeaux Resp. Ex. G, ECF No. 100-7). In the absence of evidence that Guilbeaux received the policy, his duty to read it has not been triggered. Accordingly, the failure to procure and negligent misrepresentation claims against Insurance Partners will go forward, as Gilbeaux has shown there is a question of material fact for the jury.

However, there is no evidence linking USAA to the application for insurance or the issuance of a policy. Transferring Gilbeaux's initial phone call to Insurance Partners does not subject USAA to liability for negligent procurement or misrepresentation claims. These claims against USAA will be dismissed.

4.    **Gross Negligence**

A claim of gross negligence requires that in addition to the usual negligence elements there must be an "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Doe v. Salvation Army*, 835 So. 2d 76, 77 (Miss. 2003). When construed in Guilbeaux's favor, the evidence is sufficient to allow the jury to consider gross negligence as to Insurance Partners. However, considering that Guilbeaux does not establish a question of material fact on the issue of USAA's simple negligence, he does not meet the higher threshold for submitting the question of USAA's gross negligence to the jury. *See Fried Alligator Films, LLC v. New York Life Ins. Co.*, No. 4:16-CV-175-DMB-JMV, 2017 WL 4355825, at *9 (N.D. Miss. Sept. 29, 2017) (quoting *McDonald v. Lemon-Mohler Ins. Agency, LLC*, 183 So. 3d 118, 126 (Miss. Ct. App. 2015)). USAA's summary judgment motion will be granted on this issue and Insurance Partner's motion will be denied.

5.    **Conversion**

Guilbeaux's allegations concerning conversion are that USAA and Insurance Partners "converted the insurance premiums delivered by [him] to [their] own use and for [their] own profit." (Guilbeaux Answer 25, 32, ECF No. 10). His claim for conversion requires him to show that USAA and/or Insurance Partners had an "intent to exercise dominion or control over goods which [was] inconsistent with [Guilbeaux's] right." *Wilson v. Gen'l Motors Acceptance Corp.*, 883 So. 2d 56, 69 (Miss. 2004) (citation omitted).

Guilbeaux did not address USAA and Insurance Partner's argument that his conversion claim fails because they neither exercised dominion over Guilbeaux's property, nor held Guilbeaux's property despite their knowledge of his right to the property.[4] The Court deems this failure an abandonment of the claim. *See Great Am. Life Ins. Co. v. Tanner*, No. 3:16-CV-70-DMB-JMV, 2018 WL 700827, at *10 (N.D. Miss. Feb. 2, 2018) (citing *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (failure to include defense of claim in response to motion for summary judgment amounted to abandonment of claim)). It will be dismissed.

## 6. Civil Conspiracy

Guilbeaux alleges a conspiracy between Zurich, USAA, and Insurance Partners to induce him to pay for insurance which Zurich later denied covered his property. (Guilbeaux Answer 25, 32, ECF No. 10). "A civil conspiracy occurs when a combination of persons conspire 'for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. Ct. App. 2013) (quoting *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (¶37) (Miss. 2004)). "To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 338 (Miss. Ct. App. 2013).

---

[4] Zurich apparently refunded Guilbeaux's premium when it denied his claim. (*See* Harrison Dep. 71, ECF No. 101-5).

USAA and Insurance Partners argue there is no evidence to support the conspiracy claim, since neither one of them denied the insurance claim, and Guilbeaux was unable to testify about any facts supporting the existence of a conspiracy. Since mere allegations of a civil conspiracy are not sufficient to overcome summary judgment, *Chapman v. Coca Cola Bottling Co.*, 180 So. 3d 676, 684 (Miss. Ct. App. 2015), this claim will be dismissed.

## 7.    Infliction of Emotional Distress

Guilbeaux alleges he has suffered severe mental anguish and emotional distress because USAA and Insurance Partners led him to believe that his home was covered by insurance, but then they denied his insurance claim. (Guilbeaux Answer 26, 33, ECF No.10). To prevail on a claim for intentional infliction of emotional distress under Mississippi law, the plaintiff must show:

> (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403-04 (Miss. Ct. App. 2013) (citing *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906-07 (Miss. 2011)). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (citing *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). This liability

will not extend to "insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Pegues*, 913 F.Supp at 982.

Alleged questionable practices during the insurance application process and denying an insurance claim because the loss is not covered by the policy cannot be described as utterly intolerable in a civilized community. *Cf. Stewart v. GMAC Mortgage, LLC*, No. 2:10cv149, 2011 WL 1296887, at *10 (S.D. Miss. Mar. 31, 2011) (finding that the defendant's alleged inequitable conduct toward the plaintiff during the foreclosure process failed to support a claim); *Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 788 (S.D. Miss. 2008) (same). No reasonable jury could find that the conduct and actions of USAA or Insurance Partners were extreme or went beyond all possible bounds of decency. This claim will be dismissed.

## 8. Negligence

Guilbeaux alleges that USAA failed to exercise the degree of care, skill, knowledge, and ability ordinarily possessed by members of its profession in the work it performed for him. To the extent that this claim is not subsumed by Guilbeaux's other negligence-based claims, the Court finds it lacks evidentiary support. The work USAA performed for Guilbeaux was to transfer his telephone call to Insurance Partners. There is no indication in the record that USAA breached a duty it owed to Guilbeaux when it transferred his telephone call to Insurance Partners. This claim will be dismissed.

## 9. Waiver and Estoppel

Guilbeaux alleges that "USAA is charged with all knowledge Guilbeaux

provided to the agent in the application process. USAA has waived or is equitably estopped from asserting any right against Guilbeaux as to the Subject Policy." (Guilbeaux Answer 27, ECF No. 10). USAA argues that it is not asserting any rights it may have under the policy against Guilbeaux. Guilbeaux does not address USAA's argument in his response, and therefore the Court deems the waiver and estoppel claim against USAA abandoned. It will be dismissed.

**10.    Negligent Supervision, Respondeat Superior/Vicarious Liability**

Guilbeaux alleges that USAA failed to supervise the agents and others handling Guilbeaux's purchase of the policy. (Guilbeaux Answer 27, ECF No. 10). A claim of failure to supervise requires a showing of duty, breach, causation and damages. *See, e.g., Cuevas v. T & J's Last Minute Seafood Express*, 1:10CV104, 2011 WL 1898919, at *3 (S.D. Miss. May 13, 2011); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (¶ 45) (Miss. 2005).

USAA argues that its relationship with Insurance Partners is governed by the Agent Services Agreement. (USAA Mem. 5, ECF No. 95). Under the Agreement, Insurance Partners "is an independent contractor" and "has the duty to supervise and be responsible for the acts and omissions of its employees." (Guilbeaux Resp. Ex. K 2-3 (Art. 2.2, 3.1), ECF No. 109-2). Guilbeaux does not point to any evidence showing that USAA had a duty to supervise Insurance Partners employees despite the express language to the contrary in the Agreement. The Court's research has not shown that Mississippi courts created or impose such a duty on contracting parties as a matter of law. Accordingly, USAA cannot be held

liable for failing to supervise Insurance Partners employees. This claim will be dismissed.

Guilbeaux includes a claim for respondeat superior and vicarious liability against USAA and Insurance Partners. "Based on the doctrine of respondeat superior, a principal, or master, is vicariously liable for his agent's acts when they are taken in the course of his employment and in furtherance of the master's business." *Martin v. Shelter Mut. Ins. Co.*, No. 3:15-CV-675-DPJ-FKB, 2016 WL 3648288, at *4 (S.D. Miss. July 1, 2016). Although Guilbeaux does not specify which cause(s) of action underlie his respondeat superior/vicarious liability claim, (*see* Guilbeaux Answer 28, 35, ECF No. 10), the Fifth Circuit has held that "[o]ur review of Mississippi case law indicates that a principal can be held vicariously liable for the misrepresentations of its agent, but not for its agent's general negligence." *Kubow v. Hartford Cas. Ins. Co.*, 475 F.3d 672, 676 (5th Cir. 2007).

Guilbeaux's actionable misrepresentation claim is against Insurance Partners, and he claims that USAA is liable for Insurance Partners' misrepresentation because Insurance Partners is the agent of USAA, who is the principal or the master. Guilbeaux attempts to show that the relationship between Zurich, Insurance Partners and USAA makes them joint venturers or partners or agents of one another. Primarily, Guilbeaux refers to the Agent Services Agreement, in which USAA describes Insurance Partners as its "partner" and requires Insurance Partners to meet certain sales and service objectives. Under the Agreement, Insurance Partners is responsible for delivering policies, being the

servicing agent for policyholders after a policy is issued, and handling and adjusting all claims on policies written under the Agreement.

The Agreement contains some explicit disclaimers of an agency relationship. For example, in the article setting out USAA's authority, the Agreement states that "[n]either Party has any authority to act for or on behalf of the other Party or to represent the other in any transaction, except to the extent such authority is expressly granted in this Agreement, or otherwise in writing." (Guilbeaux Resp. Ex. K 2-3, ECF No. 109-2). Insurance Partners has the duty to perform the contracted-for services in accordance with "Service Level Objectives" set out in the Agreement, and to allow USAA to audit Insurance Partners' "records and accounts relating to its business with [USAA]." (*Id*. at 3). Insurance Partners has "sole responsibility to handle and adjust all claims." (*Id*. at 4).

Under Mississippi law, a defendant may be liable as a principal for its agents' actions when that defendant controls or has the right to control the work of its alleged agent. *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 166 (Miss. 2009). In *Fonte*, the precise question was whether Audubon Insurance Company, a servicer for the Mississippi Windstorm Underwriting Association ("MWUA"), was a co-principal or a disclosed agent of MWUA. Audubon's contracted services to MWUA were "issuing policies on behalf of MWUA, adjusting claims, and providing full claim supervision." *Id*. at 165. MWUA owned the files, records and data created by Audubon. *Id*. at 165-66. The court found that whether MWUA had the necessary control over Audubon required for a principal-agent relationship to exist was a jury question.

*Id.* at 166.

In a more factually analogous case, the court held that an agency theory will not apply where the insurance agent simply assists in procuring another company's coverage. *See Chevis v. Miss. Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 195 (Miss. Ct. App. 2011). The plaintiff in *Chevis* purchased windstorm coverage with MWUA through his Farm Bureau agent. But since there was no question that the plaintiff knew he was purchasing windstorm coverage from MWUA and not Farm Bureau, the plaintiff could not "claim Farm Bureau, under the guise of an agency theory, breached the MWUA policy." *Id.*

This case presents significantly fewer facts to support an agency relationship than those in *Fonte*, since Insurance Partners does not issue or service policies on USAA's behalf. Insurance Partners issues and services policies USAA cannot, and USAA has the contractual right only to monitor or audit Insurance Partners' records concerning the referred USAA customers. (Guilbeaux Resp. Ex. K 3-4, ECF No. 109-2). And there can be no question that Guilbeaux knew he was obtaining insurance through Insurance Partners rather than USAA. After receiving Trigg's quote for the builder's risk insurance, he asked her via email: "Sue, so this is not insured with USAA? As USAA has been so good to me, I am trying to keep my business with them. Please advise." (USAA Mot. Ex. 3 at 2, ECF No. 83-3) (ECF pagination). Trigg replied:

> Thank you for your question. It's true, we are not USAA. We do, however, have an agreement with them. They refer clients to us that they are unable to write these types of policies for. We are an

outsource for them and we are in full expectation that once the work is completed, that the clients will go back to USAA for their future products. Hope this helps.

(*Id.*). In the Court's view, *Chevis* prevents Guilbeaux from pursuing a misrepresentation claim against USAA by alleging that Insurance Partners is its agent. There is no evidence that USAA did anything more than assist Guilbeaux purchase the coverage he desired by transferring his call to Insurance Partners. Guilbeaux's vicarious liability claims will be dismissed.

CONCLUSION

For the reasons stated above, Insurance Partners is entitled to summary judgment on all of Guilbeaux's counterclaims against it except failure to procure, negligent misrepresentation, and gross negligence claims. Insurance Partners' Motion will be granted in part and denied in part. USAA is entitled to summary judgment as to all of Guilbeaux's counterclaims against it. USAA's Motion will be granted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [83] Motion for Summary Judgment filed by USAA Insurance Agency, Inc., is **GRANTED**. Curtis Guilbeaux's counterclaims against USAA Insurance Agency, Inc., are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [85] Motion for Summary Judgment filed by Southwest Business Corporation d/b/a Insurance Partners, is **DENIED** as to Curtis Guilbeaux's counterclaims of failure to procure, negligent misrepresentation, and gross negligence. The Motion is **GRANTED** as to

all remaining counterclaims against Southwest Business Corporation d/b/a

Insurance Partners, and those counterclaims are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 5th day of April, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE